2009 Oct-07 PM 01:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

FILED

2009 OCT-6 P 1:22

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **WILLIE C. & DOROTHY CLEVELAND, individually and on behalf of a class described herein** | § § § § § § § |
| **Plaintiffs,** | § § § |
| **vs.** | § |
| **HUGH EDMONDS DISCOUNT COMPANY, INC.,** | § § § § § |
| **Defendant.** | |

**Case No.:**

**JURY DEMANDED**

CV-09-HGD-1991-W

## COMPLAINT

### INTRODUCTION

1.    This complaint is filed under the Truth-In-Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*., ("TILA"), and the Home Ownership and Equity Protection Act ("HOEPA"), to enforce the plaintiff's right to rescind a consumer credit transaction, to void the Defendant's security interest in the Plaintiff's home, and to recover statutory damages, enhanced HOEPA damages, reasonable attorney's fees and costs by reason of the Defendant's violations of the TILA, HOEPA and Regulation Z, 12 C.F.R. § 226 *et seq*. The complaint also asserts the rights of a class of similarly-situated persons defined below.

### JURISDICTION AND VENUE

2.    Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.

3.    All of the events complained of herein occurred in this district.

4.    Plaintiffs, Willie C. & Dorothy Cleveland ("the Cleveland's") own and reside in a home at 66 Dogwood Drive, Brent, Alabama.

5.    Defendant, Hugh Edmonds Discount Company, Inc. ("Edmonds" or "Defendant"), is an Alabama corporation having its principal place of business at 10258 Highway 5, Brent, Alabama 35034.

6.    Edmonds is a "creditor" as that term is defined at 15 U.S.C. § 1602(f).

## FACTUAL ALLEGATIONS

### The Cleveland Loan

7.    Edmonds is a lender based in Alabama and originates mortgage loans in Alabama.

8.    On June 1, 2009, Defendant made a loan to the Clevelands.

9.    The loan amount was $19,791.46, with Defendant taking a mortgage on Plaintiffs' home.

10.    The loan was obtained for personal, family or household purposes, namely, the refinancing of prior debts incurred for such purposes.

11.    In connection with the June 1, 2009, transaction, the Cleveland's signed or received a "Mini-code Loan Note & Security Agreement" form. *See* Exhibit A.

12.    According to the note and security agreement the loan had a "Note" interest rate of 30.50% and a disclosed Annual Percentage Rate ("APR") of 30.72%.

13.    Incident to the transaction the Clevelands were also charged $1,640.81 for credit life insurance and $120.00 for "Interest Surcharge."

14.    The surcharge and credit insurance constitute "points and fees" as that term is used in 15 U.S.C. § 1602(aa)(B)(i) and 12 C.F.R. § 226.32(b)(1).

15.    The total charge for points and fees equals $1,760.80 ($120.00 + $1,640.80 =

$1,760.80).

16.     The loan is a "High Cost" or HOEPA loan as defined in 15 U.S.C. § 1602(aa) because the APR of 30.72% exceeds the HOEPA loan threshold as set forth therein.

17.     The loan is also a HOEPA loan because the Clevelands were charged "points and fees" that exceed 8% of the "Total Loan Amount," as that term is used at 12 C.F.R. § 226.32(a)(1)(ii).

18.     The Clevelands were entitled to a special pre-consummation notice three days prior to the consummation of the loan pursuant to 15 U.S.C. § 1639(a), 12 C.F.R. §S 226.31 and 226.32. This notice is known in industry parlance as a "Section 32" notice.

19.     Defendant did not provide a Section 32 notice to the Clevelands.

20.     Defendant also provided to the Clevelands defective notices of their right to rescind the transaction. *See* Exhibit "B."

21.     The notices the Defendant provided to the Clevelands do not clearly and conspicuously disclose the date of consummation and do not disclose the last day to cancel the transaction as required by 12 U.S.C. § 226.15(b).

22.     Since the transaction was secured by Plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of the home, it was subject to the right to cancel provided by (a) 15 U.S.C. §1635 and 12 C.F.R. §226.23.

Section 226.23 provides:

(a) Consumer's right to rescind.

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.

(2) To exercise the right to rescind, the consumer shall notify the creditor of the

rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires....

(f) Exempt transactions. The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

23.    Plaintiffs have given notice of their election to rescind.

24.    The defendant has failed and refused to honor plaintiffs' election to rescind.

25.    A consumer reviewing his or her closing documents without the benefit of the omitted Section 32 notice would be unable to determine that his or her loan was a high cost or HOEPA loan.

26.    The defendant intentionally suppressed the fact that the Plaintiffs' loan and the loans of class members were "high cost" or HOEPA loans in order to avoid the 3-day advance cooling off period.

27.    Defendant knowingly and actively misled the Plaintiffs and the Members of the Plaintiffs' Class from pursuing their claims by, among other things:

        a.    Engaging in a scheme that was by its nature and design "self-concealing";

        b.    Knowingly and actively mischaracterizing and misrepresenting amounts paid for charges;

        c.    Engaging in deception and fraud and taking unfair advantage of borrower's lack of understanding of loan terms.

28.    Plaintiffs exercised reasonable diligence during their loan transactions and dealings with Defendant and in reviewing their loan documentation and they could not have, nor could they have been reasonably expected to, uncover the true facts.

## COUNT I

## CLASS CLAIMS

29.    Plaintiffs incorporate the factual allegations set forth above as though fully set forth herein.

30.    The actions of the defendant violated at least 15 U.S.C. §§1635, 1638, 12 C.F.R. §§ 226.23 and 226.32.

31.    Plaintiffs bring this claim on behalf of a class. The class consists of (a) all natural persons (b) who obtained non-purchase-money loans from the Defendant that were secured by their residences, (c) on or after a date three years prior to the filing of this action (d) for purposes other than the initial construction or acquisition of those residences, (e) where the Defendant committed one or more of the TILA violations described above.

32.    Upon information and belief, Defendant has made hundreds of these loans and therefore the class members are so numerous that joinder is impracticable.

33.    There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. Some of the predominant common questions are:

    a.    Whether the defendant had a practice of using the form Right-to Cancel notices as exemplified by Exhibit B in connection its loans;

    b.    Whether doing so violates TILA:

    c.    Whether the defendant had a practice of making "high cost" loans with out making the proper disclosures;

    d.    Whether doing so violates TILA.

34.    Plaintiffs' claims are typical of the claims of the class members. All claims are based on the same factual and legal theories.

35.    Plaintiffs will fairly and adequately represent the interests of the class members.

36.    Plaintiffs have retained counsel experienced in consumer class action cases.

37.    A class action is superior to other alternative methods of adjudicating this dispute. Most of the class members are unaware of the deception practiced upon them. Individual

Most of the class members are unaware of the deception practiced upon them. Individual cases are not economically feasible.

WHEREFORE, plaintiffs requests that the Court enter judgment in favor of them and the class members and against Defendant for:

a.  A declaration that any class members who so desire may rescind their transactions;

b.  Statutory damages;

c.  Attorney's fees, litigation expenses and costs of suit;

d.  Such other or further relief as the Court deems proper.

## COUNT II- INDIVIDUAL CLAIM

38.  Plaintiffs incorporate the relevant paragraphs above.

39.  Plaintiffs are entitled to rescind their transaction.

WHEREFORE, Plaintiffs request that the Court grant the following relief in favor of Plaintiffs and against Defendant:

a.  A judgment voiding Plaintiffs' mortgage, capable of recordation in the public records;

b.  Statutory damages;

c.  A judgment declaring what obligation if any Plaintiffs have toward Defendant;

d.  Attorney's fees, litigation expenses and costs of suit;

e.  Such other or further relief as the Court deems proper.

Respectfully submitted, this October 4, 2009.


/s/ Earl P. Underwood, Jr.
Earl P. Underwood, Jr. (UNDEE6591)
Attorney for Plaintiffs

Fairhope, AL 36533-0969
Telephone: (251) 990-5558
Facsimile: (251) 990-0626
epunderwood@alalaw.com

/s/Milton Brown, Jr.
Milton Brown, Jr.
Attorney at Law, P.C.
2608 8th Street
Tuscaloosa, Al   35401
Tel.:   (205) 391-0620
 Milton@miltonbrownlaw.com

/s/Steven P. Gregory
Gregory Law Firm, P.C.
46A Mt. Laurel Avenue
Birmingham, AL   35242
gregory46@mac.com

## JURY DEMAND

Plaintiffs demand a jury trial herein.

/s/ Earl P. Underwood, Jr.

# EXHIBIT A

## ALABAMA – NET
### MINI-CODE LOAN NOTE AND SECURITY AGREEMENT

| LOAN DATE 06/01/2009 | ACCOUNT NUMBER 3331 | CONTRACT NUMBER | CERTIFICATE # |
|---|---|---|---|
| DEBTOR AND CO-DEBTOR (YOU AND YOUR ) WILLIE C CLEVELAND & DOROTHY CLEVELAND 76 DOGWOOD DRIVE BRENT, AL 35034 | | | CREDITOR/LENDER (FIRST BENEFICIARY) Edmonds Discount Company 10258 Highway 5 Brent, AL 35034- |

1. **ALTERNATIVE DISPUTE RESOLUTION AGREEMENT: The Insured** acknowledges that the Certificate of Insurance contains an alternative dispute resolution procedure for the settlement of any controversies between The Insured and the Insurer. The terms of the Alternative Dispute Resolution Clause are found in the General Provisions of the Certificate. The Insured hereby acknowledges that the agreement of The Insured to the Alternative Dispute Resolution Clause of the Insurance Certificate is a material inducement to the insurer to offer this Certificate of Insurance.

_____ _____ 06/01/2009
Signature of Primary Borrower    Signature of Co-borrower    Date

2. **THE AMOUNT OF THE LOAN AND INTEREST ON THE LOAN: (check** appropriate box below)

☒ (interest bearing) - We are lending you the Total Cash Advance. This is also called the Loan. Interest will be computed on the Total Cash Advance from time to time outstanding, except interest will not accrue on the Account Maintenance Fee. If disclosed in the Amount Financed Itemization, you will also be charged prepaid finance charge in the amounts allowed by the Alabama law. The total of the prepaid finance charge and the interest is the Finance Charge. Interest is calculated every day on the basis of 1/365th of your annual interest rate. Your annual interest rate is 30.50 %. If your payment is early, you will pay less interest than if you pay on the scheduled day. If your payment is late, you will pay more interest. You promise to pay to us or to our order the Total Cash Advance together with accrued interest by making the monthly payments in the amounts and at the times indicated in the payment schedule, at our office at the address shown or at any other address which we give you.

☐ (pre-computed) - We are lending you the Total Cash Advance. This is also called the Loan. Interest on the Total Cash Advance has been pre-computed and is included in the Total of Payments. If disclosed in the Amount Financed Itemization, you will also be charged prepaid finance charge in the amounts allowed by Alabama law. The total of the prepaid finance charge and the interest is the Finance Charge. You promise to pay to us or to our order the Total Cash Advance by making the monthly payments in the amounts and at the times indicated in the payment schedule, at our office at the address shown or at any other address which we give you. After maturity, interest will be charged at the Annual Percentage Rate excluding prepaid finance charge.

3. **DEFERMENT:** If this loan is pre-computed, a monthly installment may be deferred by agreement of the parties before or after default, and Borrower(s) agree that Lender may collect an additional charge for each full month that any wholly unpaid scheduled payments are outstanding after the due date of each such scheduled payment equal to that proportion of the finance charge which the amount of the deferred monthly scheduled payment bears to the sum of all monthly balances originally scheduled.

4. **LATE CHARGES:** If any payment is past due (5 days or more, a late charge equal to $18.00 or 5% of the amount of the payment in default, whichever is greater, but not to exceed $100.00, may be collected.

5. **PREPAYMENT IN FULL REBATE:** Borrower(s) may prepay this loan in full at any time. No portion of real estate points will be refunded. Where an Interest Surcharge has been charged, and prepayment in full occurs in full within ninety (90) days of the ate of the contract, the Creditor shall refund or credit the Borrower with a pro rata portion of the Interest Surcharge, except that in such event, an amount of no less than $25.00 may be retained by the Creditor. In the event of renewal, refinance or repayment in full, the Borrower shall be entitled to a refund or credit of any unearned portion of the Account Maintenance Fee computed in the manner set forth in subsection (c) of Section 5-19-4, Code of Alabama, as of the date of such renewal, refinancing or payment in full.

If this loan is pre-computed, and if the loan is prepaid in full, the Lender shall refund unearned interest by the rule of 78s or sum-of-the-digits method; provided, however, if the original term of the loan is sixty-one (61) months or more, and the loan is prepaid, the Lender shall rebate unearned interest according to the actuarial method; and, provided further, that if the loan is prepaid in full within the first 120 days, the Lender shall rebate unearned interest according to the actuarial method. If prepayment in full is made other than on a scheduled payment date, the nearest scheduled payment date will be used to make the computation. No refund of less than $1.00 will be made.

6. **SECURITY FOR THIS LOAN:** Borrower(s) hereby grants to Lender a security interest under the Uniform Commercial Code in property described below. This security interest is subject to the provisions contained on the reverse side hereof.
LOT 22 WESTWOOD ESTATES

### AMOUNT FINANCED ITEMIZATION

| | | |
|---|---|---|
| Total of Payments | $ | 63,486.00 |
| Interest | $ | 43,694.54 |
| Total Cash Advance | $ | 19,791.46 |
| Less: Prepaid Finance Charge: | | |
| Real Estate Points | $ | 0.00 |
| Interest Surcharge | $ | 120.00 |
| Account Maintenance Fee | $ | 0.00 |
| Amount Financed | $ | 19,671.46 |
| The Amount Financed will be disbursed to or for Debtor as follows | | |
| Credit Life Insurance Premium* | $ | 1,640.81 |
| Credit Disability Insurance Premium* | $ | 0.00 |
| Property Ins. (Level Term) Premium* | $ | 0.00 |
| Other Insurance Premium* | $ | 0.00 |
| Motor Vehicle Insurance* | $ | 0.00 |
| Limited Physical Damage Premium* | $ | 0.00 |
| Single Interest Insurance Premium* | $ | 0.00 |
| Non-Filing Insurance* | $ | 0.00 |
| Official Filing Fee | $ | 41.90 |
| Sub-Total | $ | 1,682.71 |
| Balance Old Account | $ | 16,838.74 |
| Late Charge Previous Account | $ | 192.11 |
| Interest Refund | $ | 0.00 |
| Interest Surcharge Refund | $ | 0.00 |
| Account Maintenance Fee Refund | $ | 0.00 |
| Credit Life Insurance Refund | $ | 1,663.43 |
| Credit Disability Insurance Refund | $ | 0.00 |
| Property Insurance Refund | $ | 0.00 |
| Other Insurance Refund | $ | 0.00 |
| Accrued Interest Due | $ | 421.33 |
| Motor Vehicle Insurance | | |
| Limited Physical Damage Refund | $ | 0.00 |
| Single Interest Insurance Refund | $ | 0.00 |
| Net Amount of Payoff | $ | 15,788.75 |

OTHER AMOUNTS ADVANCED TO DEBTOR AND/OR PAID TO OTHERS ON HIS BEHALF:

| | | |
|---|---|---|
| To | $ | 0.00 |
| To | $ | 0.00 |
| To | $ | 0.00 |
| Cash Received by Debtor | # | 2,200.00 |

* Borrower acknowledges that lender has a financial interest in the sale of insurance and motor club membership by virtue of commission income which it may receive.

Borrower acknowledges the existence of a separate Alternative Dispute Resolution Agreement signed concurrently with the loan agreement and specifically agrees to its terms.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

The Borrower(s) acknowledge receipt of a completely filled-in copy of this document.

SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS.

## CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

By: _____    _____ (BORROWER) (SEAL)
(AGENT FOR LENDER)

MCLN -1 (4/06) ALLEN PRINTING (256) 353-0028    _____ (BORROWER) (SEAL)

_____ (BORROWER) (SEAL)

### STATEMENT OF ACCOUNT, NON-NEGOTIABLE - PAGE 2

1 of 4

## EXHIBIT A

### ADDITIONAL TERMS OF PROMISSORY NOTE AND SECURITY AGREEMENT

16. **Motor vehicle insurance requirements:** If the amount financed is $300.00 or more (excluding charges for insurance) and if the collateral is a motor vehicle and it has a retail value of at least $500.00 and a value of at least four times the protection insurance premium (if other collateral is used in addition to the motor vehicle, no motor vehicle insurance will be required unless the recognized loan value of the motor vehicle is at least 30% of the cash advanced and the two preceding requirements are met), Borrower agrees to maintain in force at all times insurance against loss of or damage to the motor vehicle (collateral) in an amount (subject to deductible) of not less than the balance owed under this Note or the retail value of the motor vehicle (collateral), whichever is less, under a Policy of Insurance which names Lender as loss payee. Borrower agrees to furnish Lender written evidence that the insurance coverage is in force at all times. If Borrower ever fails to maintain the insurance which is required under this Note against loss of or damage to the motor vehicle (collateral), Lender may, at Lender's option after giving Borrower at least 15 days' written notice, purchase insurance covering only Lender's interest in the motor vehicle (collateral) against loss or damage; this insurance is called "single interest insurance," but Lender is not required to purchase any insurance. If Lender purchases any such insurance, Borrower agrees to reimburse Lender immediately for the premiums for this insurance. If Borrower(s) fails to do so, Lender may add the premiums for this insurance to the unpaid balance under this Note, and such premiums will accrue interest at the Annual Percentage Rate disclosed in the Disclosure Statement (excluding interest surcharge) but not greater than the maximum rate allowed by law. Borrower promises to pay the premium for such insurance and the interest thereon in equal monthly payments over the term of the insurance purchased. If Borrower purchases single interest insurance or Lender purchases it on the motor vehicle (collateral) under the terms of this Notice, Lender will be acting solely on Lender's own behalf and neither Lender nor the insurance agent will be acting as Borrower's broker. Lender may purchase the insurance through an insurance agency affiliated with Lender through the common ownership or otherwise. The agency or Lender who sells the insurance may receive a commission on the purchase of the insurance and/or other financial incentives. Single interest insurance does not provide coverage for Borrower's interest in the collateral. Single interest insurance may be more expensive than a policy purchased by the owner of the property. IF A SINGLE INTEREST INSURANCE POLICY IS ISSUED, IT WILL NOT PROVIDE PROTECTION AGAINST LIABILITY FOR BODILY INJURY OR DAMAGE OF THE PROPERTY OF OTHERS. IT WILL NOT FULFILL THE OBLIGATION TO MAINTAIN LIABILITY INSURANCE IMPOSED UPON BORROWER(S) UNDER THE FINANCIAL RESPONSIBILITY LAWS OF ANY STATE. BORROWER MAY CHOOSE THE PERSON THROUGH WHICH PROPERTY DAMAGE INSURANCE IS OBTAINED. BORROWER HAS THE OPTION OF PROVIDING ANY SUCH INSURANCE THROUGH AN EXISTING POLICY OR A POLICY INDEPENDENTLY OBTAINED AND PAID FOR BY BORROWER. Borrower's obligation will not be affected by any such loss or damage except that if the motor vehicle (collateral) is insured any proceeds paid to Lender will reduce Borrower's obligations to Lender.

17. **Waivers:** Each of the subscribing parties, whether maker or guarantor, hereby separately waives as to this Indebtedness or any renewal or extension hereof, demand, presentment, protest, notice of protest, suit, and all other requirements necessary to hold Him, or any of them, liable and further agrees that payment may be extended or the indebtedness renewed or other indulgence granted without notice to or consent of any of such parties, and without releasing the liability of any such party. Borrower(s) hereby waives all personal property rights of exemption under the Constitution and laws of the State of Alabama, with respect to any security purchased with the proceeds of this Note.

18. **Special provisions for loans secured by home:** This section is applicable only if this Note is secured by a mortgage on the Borrower's home but the proceeds of this Note were not used to finance the original acquisition or construction of such home, and if this loan is pre-computed. If this section is applicable, the following provisions shall be in effect in place of Section 5. Borrower(s) may prepay this loan is full at any time and, except as otherwise herein provided, there shall be no penalty or other charge for such prepayment. If (i) the original term of the loan is sixty-one months or less; and (ii) the prepayment is made within five years from the consummation of this loan; and (iii) the source of prepayment is not a refinancing by the Lender or an affiliate of the Lender; and (iv) at consummation of this loan, the Borrower(s') total monthly debts did not exceed 50% of the Borrower(s') monthly gross income, as verified by the Borrower(s') signed financial statement, a credit report, and payment records for employment income, the refund of the precomputed unearned interest shall be computed by the "Rule of 78s." Otherwise, the refund of the unearned interest shall be computed according to a method at least as favorable as the actuarial method defined in 15 U.S.C. §1615(d). In either event, if the loan is renewed or refinanced by the Lender or its affiliate within 120 days from the date of the loan, then unearned precomputed interest shall be refunded on a daily pro rata basis. If prepayment in full is made on other than a scheduled payment date, the nearest scheduled payment date shall be used in computing unearned precomputed interest where the Rule of 78s is employed. No portion of the loan fee (real estate points), if any has been charged, will be refunded. No refund of the interest surcharge, if any, will be made except that, if this loan is paid in full by any means within 90 days from the loan date, the surcharge will be rebated on a daily pro rata basis; however, Lender may retain an amount up to $25.00.

19. If you believe any information relating to you held by this Lender is inaccurate, notify the Lender of the specific information that is inaccurate. This notification is to be sent to the Lender at the name and address shown on the front of this contract to the attention of the Fair Credit Reporting Act Compliance Department.

---

The following Notice is applicable if the proceeds of this loan are applied in whole or in substantial part for the purchase of goods or services from a seller who (1) refers consumers to the Creditor or (2) is affiliated with the Creditor by common control, contract, or business arrangement.

### NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

SEE PAGES 1, 2, 3, AND 4 FOR ADDITIONAL TERMS AND CONDITIONS.

**STATEMENT OF ACCOUNT, NON-NEGOTIABLE - PAGE 4**

## EXHIBIT A

### ALABAMA – NET
### MINI-CODE LOAN NOTE AND SECURITY AGREEMENT

| LOAN DATE 06/01/2009 | ACCOUNT NUMBER 3331 | CONTRACT NUMBER | CERTIFICATE # |
|---|---|---|---|

| DEBTOR AND CO-DEBTOR (YOU AND YOUR) WILLIE C CLEVELAND & DOROTHY CLEVELAND 76 DOGWOOD DRIVE BRENT, AL 35034 | CREDITOR/LENDER (FIRST BENEFICIARY) Edmonds Discount Company 10258 Highway 5 Brent, AL 35034- |
|---|---|

INSURANCE: Credit Life and Disability Insurance are not required to obtain this loan and will not be provided unless You sign below and agree to the additional cost.

| TYPE | LIFE INS. TYPE | TERM OF INS. | PREMIUM | SIGNATURE FOR VOLUNTARY INSURANCE | AGE | DATE |
|---|---|---|---|---|---|---|
| Single Credit Life Insurance | XX LEVEL DECR. | 98 mos. | $ 1,640.81 | I want single credit life insurance. | 62 | 06/01/2009 |
| Joint Credit Life Insurance | LEVEL DECR. | 0 mos. | $ 0.00 | We want joint credit life insurance.   Primary Debtor | 0 | |
| | | | | Co-Debtor | 0 | |
| Single Disability Insurance | | 0 mos. | $ 0.00 | I want disability insurance. | 0 | |

| Total Disability Insurance Coverage is available only on Primary Debtor for a maximum of 60 Monthly Total Disability Benefits with a life decreasing term coverage. Benefits are payable after a WAITING PERIOD of (elect one):<br>☐ 7 DAYS and are RETROACTIVE        ☐ _____ 0 DAYS and are RETROACTIVE<br>The Monthly Disability Benefit is $ _____ 0.00 | INITIAL AMOUNT OF LIFE INSURANCE $ 19,671.46 | SECOND BENEFICIARY (Estate – if none named) |
|---|---|---|
| | CANCELLATION OPTION: If You desire to do so You may, without penalty or obligation, within thirty days from the date set forth above, cancel, all but not part of, the above credit insurance coverages by returning all credit insurance certificates received in connection with this loan to the office where the loan was made. Upon cancellation, a full refund of all the above credit insurance premiums and premiums cost will be made. | |

NO LIABILITY INSURANCE FOR BODILY INJURY OR DAMAGE TO PROPERTY OF OTHERS IS PROVIDED BY THIS CONTRACT. Therefore, insurance under this contract will not fulfill the obligation of the Borrower(s) to maintain liability insurance imposed upon the Borrower(s) under the Financial Responsibility Laws of any state. The Borrower(s) will provide insurance against loss of or damage to the property as the Lender may reasonably require if the amount financed, less any charges for insurance, is $300.00 or more and the value of the property is $300.00 or more. Property insurance may be obtained from anyone You choose or it may be furnished through an existing policy owned or independently obtained by You. If You get the insurance from Us, the cost will be:

| Credit Property Insurance Level Term | | Insured | 0.00 | I/We Want Credit Property Insurance |
|---|---|---|---|---|
| Premium $ 0.00 Term 0 mos. | Amount $ | 0.00 | | |
| Other Insurance | | | | I/We Want Insurance |
| Premium $ 0.00 Term 0 mos. | Amount $ | 0.00 | | |
| Motor Vehicle Insurance FOR LENDER'S INTEREST | | | | I/We Want Motor Vehicle Insurance |
| Limited Physical Damage | | Insured | 0.00 | Limited Physical Damage Coverage |
| Premium $ 0.00 Term 0 mos. | Amount $ | 0.00 | | |
| Motor Vehicle Single Interest FOR LENDER'S INTEREST | | Insured | | I/We Want Motor Vehicle Single Interest Insurance |
| Premium $ 0.00 Term 0 mos. | Amount $ | 0.00 | | |

If within fifteen (15) days Debtor has Lender made loss payee on a dual interest motor vehicle casualty policy, all motor vehicle casualty premiums and premiums cost will be refunded. If permitted by law, the agent or agency which places any of the insurance may receive a commission on the purchase of insurance.

### FEDERAL DISCLOSURE STATEMENT

LATE CHARGE: If a payment is 10 days or more late, You may be charged $ 18.00 or 0.05 % of the amount of the payment in default, whichever is greater, but not to exceed $ 100.00
Prepayment: If You pay off early, You may be entitled to a refund of part of the finance charge, and you will not have to pay a penalty.

Filing Fees $ 41.90 Non-Filing Insurance $ 0.00

SECURITY: You are giving a security interest in Your property as checked in the following box(es):
☐ Certain household items
☐ Motor Vehicle(s)
0

LOT 22 WESTWOOD ESTATES
BIBB COUNTY
☐ Other

| | ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | AMOUNT FINANCED The amount of credit provided to You or on Your behalf. | TOTAL OF PAYMENTS The amount You will have paid after You have made all payments as scheduled. |
|---|---|---|---|---|
| | 30.72 % | $ 43,814.54 | $ 19,671.46 | $ 63,486.00 |

You have the right to receive at this time an Itemization of the Amount Financed.
☒ I want an itemization.        ☐ I do not want an itemization.

Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments are Due | |
|---|---|---|---|
| 120 | $ 529.05 | 07/01/2009 1st PAYMENT DATE | and same date of each month following |
| | $ | Maturity Date = 06/01/2019 | |

☒ On Your real estate located at: **LOT 22 WESTWOOD ESTATES**

ASSUMPTION: ☐ If checked, this is a residential mortgage transaction and someone buying Your house may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.
See Your contract documents for any additional Information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

SEE PAGES 1, 2, 3, AND 4 FOR ADDITIONAL TERMS AND CONDITIONS.

STATEMENT OF ACCOUNT, NON-NEGOTIABLE - PAGE 1



3 of 4

## EXHIBIT A

### ADDITIONAL TERMS OF PROMISSORY NOTE AND SECURITY AGREEMENT

7.  **OWNERSHIP OF COLLATERAL:** Borrower(s) warrants and agrees that Borrower(s) owns the property pledged as collateral or given as security, that Borrower(s) will not sell it, and that it is in Borrower(s)'s possession and that Borrower(s) will keep it free from any liens or assessments while it is being used as security for Borrower(s)'s loan by promptly paying any such lien or assessment and that at Lender's request Borrower(s) will sign all financing statements requested or if the security is a motor vehicle Borrower(s) will obtain a certificate of title which notes a lien in Lender's favor and Borrower(s) agrees to pay the cost of filing same.
The borrower(s) or debtor(s) authorizes the lender to file a financing statement covering the Collateral described in this security agreement.

8.  **Use of collateral and insurance requirements:** While any part of Borrower(s)' loan is unpaid, Borrower(s) promises (1) to use the collateral carefully and keep it in good repair; (2) to tell Lender in writing before changing Borrower(s)' address or the address of the collateral; (3) not to use the collateral for any unlawful purpose; (4) to pay all taxes due on the collateral; (5) if the amount financed less any charge(s) for insurance is $300.00 or more, to keep the collateral fully insured against loss or damage, to make any insurance policy payable to Lender in an amount equal to the lesser of the value of the collateral or the unpaid balance of Borrower(s)' loan, and to deliver the Policy to Lender. If Borrower(s) does not pay taxes on the collateral or keep it insured, Lender can if Lender wishes to do so and Borrower(s) will have to reimburse Lender with interest; (6) that the confiscation, loss, theft, damage, or destruction of the security shall not affect your obligation hereunder and that the security, if personal property, shall remain personal property.
Borrower(s) understands that, until default, Borrower(s) may keep the collateral and use it in any lawful manner, but if Borrower(s) defaults Lender shall have the right to take possession of the collateral. Read below for motor vehicle insurance requirements.

9.  **Default:** Borrower(s) will be in default under this Agreement if any of the following occur:  (1) If Borrower(s) fails to make payments or any parts thereof as promised or Borrower(s) faults to keep any other promise Borrower(s) has made in this Disclosure Statement, Note and Security Agreement; (2) If Borrower(s) becomes insolvent or files bankruptcy; (3) If a lien (other than Lender's) is put on the collateral or if it is confiscated, lost, stolen, damaged, or destroyed.

10. **Default/declaring the entire balance due:** If Borrower(s) is in default, the amount Borrower(s) owes, less unearned charges computed as set out in the prepayment section of the Note, will become due at Lender's option without advising Borrower(s); thereafter, Borrower(s) shall pay interest on the unpaid balance at the stated Annual Percentage Rate excluding the Prepaid Finance Charge until said Note is paid in full. If Lender repossesses, Lender can request that Borrower(s) assemble and deliver the collateral to Lender or Lender can take possession of the collateral if this can be done without breach of the peace, or by voluntary surrender by Borrower(s) or in the manner provided by law. After giving Borrower(s) 10 days' notice of Lender's intent to sell the security; Lender may do so in any reasonable manner. The proceeds of the sale will be credited to what Borrower(s) owes Lender. Lender can add to what Borrower(s) owes Lender the costs of repossession and sale to the extent not prohibited by law. Borrower(s) will pay Lender any difference plus interest between the sale proceeds and what Borrower(s) owes Lender, and if any money is left over after Lender has applied the proceeds to all amounts Borrower(s) owes, it will be paid to Borrower(s). Borrower(s) understands that Lender has all the rights of a secured party under the Uniform Commercial Code in addition to the rights set forth above. Lender will not be legally responsible for any personal property found in collateral that is repossessed but Lender will make reasonable attempts to protect such property.

11. **Attorney's fees and court costs:** If the original amount financed exceeds $300.00, then upon default and referral to an attorney not the salaried employee of Lender, Borrower(s) shall pay Lender's reasonable attorney's fees not exceeding 15% of the unpaid debt after default.

12. **Dishonored checks:** Borrower(s) agrees to pay a dishonored check charge of $    0.00 (or such greater amount if allowed by applicable law) for the return of an unpaid or dishonored instrument.

13. **Credit practices rule:** If certain household items are pledged as security or collateral to secure this Note, no "household items," prohibited by Federal Law as defined by 444.1(i), Title 16, Code of Federal Regulation, shall be used to secure this Note except those items purchased with the proceeds of this Note. If any household item(s) listed under the Security section of this Agreement is determined to violate the above Federal Regulation, then the security interest taken in such item(s) will be void and the preceding statement will govern.

14. **Miscellaneous:** This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of Alabama. If any provision of this Note and Security Agreement is unlawful or unenforceable, such provision shall be without force and effect without thereby affecting any other provision hereof. No provision of this Note and Security Agreement is intended to require the payment of interest or finance charge in excess of the maximum permitted by law. If any court determines that interest or finance charge in excess of the maximum permitted by law is provided for in this Note and Security Agreement, the provisions of this paragraph will govern, and the Borrower(s) will not be obligated to pay the amount of such interest or finance charge to the extent that it is in excess of the maximum interest or finance charge permitted by law, and any excess interest or finance charge collected will be applied in reduction of the principal sum.  If Borrower(s) has purchased insurance coverage(s) through Lender, Borrower(s) acknowledges receipt of a copy of the Insurance Certificate or Policy.

15. **Credit Insurance:** Credit insurance, other than credit property and motor vehicle insurance, is not required as a condition of granting the credit, and may be canceled by any insured at any time by written notice to Lender.  Borrower acknowledges that Lender has a financial interest in the sale of insurance, and may benefit from the sale of such insurance by virtue of commission income which it may receive.  If You purchase it, credit life insurance proceeds will be used to repay Your debt to the Lender in the event of Your death as described in the Insurance Certificate. If You purchase it, credit disability insurance proceeds will be used to repay Your indebtedness to the Lender in the event of Your "disability" as described in the Insurance Certificate.  If You purchase insurance though the Lender, the insurance premium is included in the amount financed under this Note.  If there is more than one Borrower, only one of You may purchase credit disability insurance under this Note.  If one of You purchases credit disability insurance by signing for credit disability, only the Borrower who signed the credit disability election under primary debtor is insured and hereby certifies that the insured is currently employed at least 30 hours per week.  Lender or a company related to Lender will act as agent for the insurance company which writes the insurance.  Individual term life insurance may be available to You at a lower cost than credit life insurance.  In case of death, the credit life insurance may not pay the entire unpaid balance of the debt owed to Lender.  This is true if any payments are past due at the time The Insured dies.  Read the Insurance Certificate for details on the amount of coverage.  A Co-borrower may cancel His or Her insurance and Lender has no obligation to notify the other Co-borrower(s).  In the event of a covered claim, any insurance proceeds in excess of the unpaid loan balance will be paid to the second beneficiary shown on Your Certificate or if none is shown, then your Estate.  Credit disability insurance may not pay the entire amount owed to Lender after The Insured becomes disabled, because the insurance will not pay payments which are past due when the disability begins.  Read the Insurance Certificate for details on the amount of coverage.  If You purchase insurance, You must complete the insurance section by signing Your name for the insurance coverage(s) You want.

### SEE PAGES 1, 2, 3, AND 4 FOR ADDITIONAL TERMS AND CONDITIONS.

### STATEMENT OF ACCOUNT, NON-NEGOTIABLE - PAGE 3

Borrower acknowledges the existence of a separate Alternative Dispute Resolution Agreement signed concurrently with the loan agreement and specifically agrees to its terms.
The Borrower(s) acknowledge receipt of a completely filled-in copy of this document.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

EXHIBIT B

# NOTICE OF RIGHT OF RESCISSION

Amount of Credit $19,791.46

Date of Disclosure Statement June 1, 2009

Date of Consummation: June 5, 2009

> (A transaction shall be considered consummated at the time a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party)

## NOTICE TO CUSTOMER REQUIRED BY FEDERAL LAW

**You have entered into a transaction on June 1,** 2009 which may result in a lien, mortgage, or other security interest on your home. You have a legal right under Federal Law to cancel this transaction, if you desire to do so, without any penalty or obligation within three business days from the above date or any later date on which all material disclosures required under the Truth in Lending Act have been given to you. If you so cancel the transaction, any lien, mortgage, or other security interest on your home arising from this transaction is automatically void. You are also entitled to receive a refund of any down payment or other consideration if you cancel. If you decide to cancel this transaction, you may do so by notifying **Hugh Edmonds Discount Co., Inc.** at 10258 Highway 5, Brent, Al by mail or telegram sent no later than midnight of June 4, 2009. You may also use any other form of written notice identifying the transaction if it is delivered to the above address not later than that time. This notice may be used for that purpose by dating and signing below.

I acknowledge receipt of two copies of this notice.

_Willis Colewland_
(signature)

_6 - 1 - 0 9_
(date)

I hereby cancel this transaction.

_____
(signature)

_____
(date)

## EFFECT OF RESCISSION

When a customer exercises his right to rescind, he is not liable for any finance or other charge, and any security interest becomes void upon such a rescission. Within 10 days after receipt of a notice of rescission, the creditor shall return to the customer any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the customer, the customer may retain possession of it. Upon the performance of the creditor's obligations under this section, the customer shall tender the property to the creditor, except that if the return of the property in kind would be impracticable or inequitable, the customer shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the customer, at the option of the customer. If the creditor does not take possession of the property within 10 days after tender by the customer, ownership of the property vests in the customer without obligation on his part to pay for it.

## TWO COPIES MUST BE GIVEN TO THE CUSTOMER

1 of 2

EXHIBIT B

## NOTICE OF RIGHT OF RESCISSION

Amount of Credit $19,791.46

Date of Disclosure Statement June 1, 2009

Date of Consummation: June 5, 2009

(A transaction shall be considered consummated at the time a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party)

### NOTICE TO CUSTOMER REQUIRED BY FEDERAL LAW

**You have entered into a transaction on June 1,** 2009 which may result in a lien, mortgage, or other security interest on your home. You have a legal right under Federal Law to cancel this transaction, if you desire to do so, without any penalty or obligation within three business days from the above date or any later date on which all material disclosures required under the Truth in Lending Act have been given to you. If you so cancel the transaction, any lien, mortgage, or other security interest on your home arising from this transaction is automatically void. You are also entitled to receive a refund of any down payment or other consideration if you cancel. If you decide to cancel this transaction, you may do so by notifying **Hugh Edmonds Discount Co., Inc.** at 10258 Highway 5, Brent, Al by mail or telegram sent no later than midnight of June 4, 2009. You may also use any other form of written notice identifying the transaction if it is delivered to the above address not later than that time. This notice may be used for that purpose by dating and signing below.

I acknowledge receipt of two copies of this notice.

_willi C Edmond_
(signature)

_6 - 1 - 0 9_
(date)

I hereby cancel this transaction.

_____
(signature)

_____
(date)

### EFFECT OF RESCISSION

When a customer exercises his right to rescind, he is not liable for any finance or other charge, and any security interest becomes void upon such a rescission. Within 10 days after receipt of a notice of rescission, the creditor shall return to the customer any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the customer, the customer may retain possession of it. Upon the performance of the creditor's obligations under this section, the customer shall tender the property to the creditor, except that if the return of the property in kind would be impracticable or inequitable, the customer shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the customer, at the option of the customer. If the creditor does not take possession of the property within 10 days after tender by the customer, ownership of the property vests in the customer without obligation on his part to pay for it.

### TWO COPIES MUST BE GIVEN TO THE CUSTOMER

2 of 2